```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DAVIS LEWIS,                   )
                               )
          Plaintiff,           )   Civil Action No. 06-1162
                               )
    v.                         )   Judge Cercone
                               )   Magistrate Judge Caiazza
COMMONWEALTH OF                )
PENNSYLVANIA, et al.,          )
                               )
          Defendants.          )
```

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

#### I.   RECOMMENDATION

It is respectfully recommended that the Defendants' renewed request for change of venue (Doc. 16) be denied, and that their Motion to Dismiss (Doc. 16) be granted in part and denied in part, as described below.

#### II.   REPORT

**BACKGROUND**

In this disability discrimination lawsuit, the undersigned filed a Memorandum on January 25, 2007 explaining that the parties had applied the wrong standards regarding the Defendants' venue challenge.  *See* Mem. and Order (Doc. 13) at 1-2 (rejecting Defendants' assertion that 28 U.S.C. § 1391(b) controlled, and finding that Plaintiff's ADA and Rehabilitation Act claims were covered by "the special venue provisions in Title VII, codified under 42 U.S.C. § 2000e-5(f)(3)").  Accordingly, the court denied without prejudice the Defendants' Motion (including their

arguments for dismissal under Rule 12(b)(6)), invited the Plaintiff to request "limited, expedited discovery regarding the factors identified in [Section] 2000e-5(f)(3)," and allowed the Defendants to renew their Motion, taking into account the proper venue standards.  *See id.* at 5-6.

The Plaintiff did not request discovery, and the parties have resubmitted moving and opposition papers that account for the standards in Section 2000e-5(f)(3).

**ANALYSIS**

    **A.**    <u>Venue</u>

As explained in the prior ruling, an ADA or Rehabilitation Act case may be brought:

> (1)    in any judicial district in the state in which the unlawful employment practice is alleged to have been committed,
>
> (2)    in the judicial district in which the employment records relevant to such practice are maintained and administered, or
>
> (3)    in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(3).

The Defendants argue venue is proper in the Middle District of Pennsylvania under each of these tests.  *See* Defs.' Br. (Doc. 17) at 3-8.  The Plaintiff restricts his arguments to the first prong, claiming "the majority of the unlawful employment

practice[s] occurred" in the Western District and that "the special venue statute authorizes statewide venue." *See* Pl.'s Opp'n Br. (Doc. 18) at 4-6, 7-8.

The Plaintiff concedes, as he must, that "the decisions that disqualified [him]" based on diabetes were made in the Middle District. *See id.* at 4, 5-6. He asks the court, though, to look to certain events in the Western District leading up to his rejection. *See, e.g., id.* at 6 (Mr. Lewis was invited to sit for written examination in Western District, his recruiter worked out of Pittsburgh, he sat for oral examination and underwent polygraph examination in Western District, and was examined by physician and received communications here).

The problem for the Plaintiff, though, is his inability to meaningfully tie these events to the unlawful discrimination alleged, namely his disqualification based on diabetes. The undersigned, moreover, is loathe to recommend that the District Court rely solely on the decisions interpreting Section 2000e-5(f)(3) as authorizing state-wide venue in the place "the unlawful employment practice is alleged to have been committed." *See* Jan. 25th Mem. and Order at 4 n.3 (noting "thorny legal issue[s]" presented by state-wide venue interpretation).

The District Court need not rely on the first prong of Section 2000e-5(f)(3), however, given the Defendants' inability

to carry their burden under the third prong in Section 2000e-5(f)(3).

In this Circuit, unlike others, the Defendants bear the burden of proving venue is improper. <u>Schurich v. Principal Financial Group</u>, 2005 WL 1229725, *3 (M.D. Pa. May 24, 2005) (citing and quoting <u>Myers v. American Dental Ass'n</u>, 695 F.2d 716, 724 (3d Cir. 1982), *cert. denied*, 462 U.S. 1106 (1983)); *see also* <u>Myers</u> at 724, 732 (rejecting alternative rule that, "when objection has been raised [by the defendant], the burden is on the plaintiff to establish . . . the district he chose is a proper venue") (citations and internal quotations omitted).

In connection with the third prong, which allows for venue where "the aggrieved person would have worked but for the alleged unlawful employment practice," the Defendants have submitted an affidavit stating:

> Once a [Pennsylvania State Police] Cadet graduates from the Academy, <u>he/she can be stationed anywhere in the State depending on the needs of the Department at that time</u>.
> . . .

*See* Decl. of Rose A. Polek (attached as Ex. C to Doc. 16) (emphasis added).

Based on their own witness' statement, the Defendants cannot rule out the possibility that Mr. Lewis would have been stationed in the Western District. *See id.* In the undersigned's view, the matter comes down to who carries the burden of proof,

-4-

and the Defendants cannot meet the required showing that venue is improper here.[1]

For these reasons, the District Court should deny the Defendants' request for change of venue.[2]

### B.  **The Defendants' Motion to Dismiss**

#### 1.  The Plaintiff's PHRA Claims Should Be Dismissed.

Pennsylvania courts have held that the PHRA waives the state's sovereign immunity, permitting the state or its agencies to be sued pursuant to that statute in state court.  *See, e.g.,* Mansfield State College v. Kovich, 407 A.2d 1387 (Pa. Commw. 1979).  The waiver does not, however, apply to state defendants, including state officials sued in their official capacities for retrospective monetary relief, when a PHRA claim is made in federal court.  *See* 42 Pa. Cons. Stat. § 8521(b) ("[n]othing contained in this subchapter shall be construed to waive the

---

[1] The Defendants' affidavit also states that, "[n]ormally, Cadets from the western part of the State are stationed in the middle part of the State." *See id.* Burdens are not carried, however, through speculation, and the Defendants cannot rule out the very real possibility that Department needs would have landed the Plaintiff in the Western District.

[2] As suggested in the January 25th Memorandum, the District Court should exercise pendent venue over the Plaintiff's PHRA claim. *See id.* at 3 n.2; *see also, e.g.,* Bragg v. Hoffman Homes, Inc., 2005 WL 272966, *2 n.1 (E.D. Pa. Feb. 3, 2005) (pendent venue should be exercised where "the proofs and the parties are the same for . . . both causes of action"; "[the federal discrimination statute] should be considered a principal cause of action whenever it is joined with a [corresponding state] cause of action," and "proper venue must be established for that principal cause") (citations and internal quotations omitted).

immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment"); *see also* Dill v. Pennsylvania, 3 F. Supp.2d 583, 586 (E.D. Pa. 1998).  The PHRA claims should be dismissed as to the Commonwealth and to the Pennsylvania State Police.

The PHRA claims should also be dismissed as to Police Commissioner Jeffrey B. Miller.  Davis' argument that Miller is subject to suit under the PHRA for prospective injunctive and declaratory relief is misplaced.  Davis relies on the doctrine announced in Ex Parte Young, 209 U.S. 123 (1908), which establishes that individual state officers can be sued for prospective and injunctive relief in order to end continuing or ongoing violations of federal law.  In Pennhurst State School & Hosp. v. Halderman, however, the Supreme Court clarified that the Young doctrine does not apply to state law claims against state officers in federal court.  *Id.*, 465 U.S. 89, 105-106 (1984) ("[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law").

For these reasons, Davis' claims under the PHRA should be dismissed.

### 2.  The ADA Claim for Monetary Damages

The Defendants argue and Davis concedes that Count I of the Complaint, alleging violations of the ADA, is made pursuant only

to Title I of the Act.  The parties also agree that Congress did not validly abrogate the states' immunity under the Eleventh Amendment when it enacted that Title, *see* Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356 (2001), and that Pennsylvania has not waived its Eleventh Amendment immunity with respect to claims made under Title I.

Recognizing that any claim for monetary damages under the ADA is thus barred, Davis requests declaratory and injunctive relief, including reinstatement.  "Federal ADA claims for [such] prospective relief against state officials are authorized by the Ex Parte Young doctrine."  Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002); *see also id.* (simply requesting prospective relief "is ordinarily sufficient to invoke the Young fiction") (citation and internal quotations omitted).

The Motion to Dismiss should be denied as to the prospective claims against Defendant Miller under the ADA.

> 3. Prospective ADA Relief and Claims under the Rehabilitation Act

According to the Defendants, the prospective claims made pursuant to the ADA and all claims under the Rehabilitation Act should be dismissed.  "The Rehabilitation Act provides that the standards of the [ADA] are to be used in determining whether the Rehabilitation Act has been violated in the employment context." Branham v. Snow, 392 F.3d 896, 902 (7th Cir.2004);

29 U.S.C. § 794(d). To state a *prima facie* case under either statute, a plaintiff must allege that: 1) he has a disability; 2) he is qualified for the position; and 3) he was discriminated against solely because of his disability. Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000). Because the parties do not dispute that Davis is qualified for the position or that the only reason he was rejected was his diabetes, the court focuses on the first element -- whether he has sufficiently alleged disability.

An individual may show "disability" in three ways: 1) he suffered an actual physical or mental impairment that substantially limits one or more major life activities; 2) he has a record of such an impairment; or 3) he has been "regarded as" having such an impairment. 42 U.S.C. § 12102(2). In his Complaint, Davis claims to satisfy each of these categories. The Defendants disagree, arguing the Plaintiff has failed to establish that he satisfies any of the statutory criteria. The court will address these criteria *seriatim*.

      a.   Actual Disability

Davis contends he is actually disabled because of diabetes. A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A) (1997). The case law of the United States Supreme Court and the Court of Appeals for the Third

Circuit establishes that determining whether an individual is disabled is a highly fact-intensive inquiry.  Herman v. Kvaerner of Philadelphia Shipyard, Inc., 461 F. Supp.2d 332, 335 (E.D. Pa. 2006) (citing Sutton v. United Airlines, 527 U.S. 471 (1999) and Fiscus v. Wal-mart, 385 F.3d 378 (3d Cir. 2004)).  The inquiry is individualized, with few bright line rules.  Fraser v. Goodale, 342 F.3d 1032, 1038 (9th Cir. 2003).

To prove disability, moreover, a plaintiff must present "evidence that the extent of the limitation in terms of [his] own experience . . . is substantial."  Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999).  Whether an impairment substantially limits a major life activity depends upon the following factors:  (1) the nature and severity of the impairment; (2) the expected duration of the impairment; and (3) the permanent or expected long term impact.  Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1119 (5th Cir. 1998) (citing 29 C.F.R. § 1630.2(j)(2)).  These factors must be analyzed in conjunction with corrective or mitigating measures taken by the plaintiff as well as their effectiveness, side effects, and burdens.  Sutton, 527 U.S. at 482.

A person whose physical or mental impairment is ameliorated by medication or other means may still have an impairment that constitutes a disability.  This is true, however, only if the impairment as mitigated places actual substantial limits on a

major life activity. It is not enough that it "might," "could," or "would" be substantially limiting in the absence of corrective measures. Emerick v. Norfolk Southern Ry. Co., 2006 WL 3692595, *6 (W.D. Pa. Dec. 12, 2006) (Gibson, J.).

Although Davis' Complaint is not a model of clarity, the Defendants do no dispute that he alleges an impairment, diabetes, that is sufficiently well-controlled to permit him to function as a State Police Cadet, but nonetheless substantially limits a major life activity.[3] This allegation of actual disability -- sketchy though it may be -- is sufficient to withstand the Defendants' Motion to Dismiss.

### b. Record of Disability

Having a record of disability means that an individual "has a history of, or has been misclassified as having," a substantially limiting impairment. 29 C.F.R. § 1630.2(k). A plaintiff attempting to prove the existence of a "record" of disability must demonstrate that the recorded impairment is a "disability" within the meaning of the ADA. Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001); *see also* Olson

---

[3] In his Opposition Brief, Davis contends, without elaboration, that he is substantially limited in the major life activity of eating. Not every restriction on food consumption constitutes a disability. In *dicta*, the Supreme Court stated that it violates "both the letter and the spirit" of the ADA (and therefore the Rehabilitation Act) to deem a "diabetic whose illness does not impair his or her daily activities . . . disabled simply because he or she has diabetes." Sutton, 527 U.S. at 483-84.

v. General Elec. Astrospace, 101 F.3d 947, 953 (3d Cir. 1996) (plaintiff relying on record of impairment must show that impairment was substantially limiting).

Davis' Complaint alleges, in skeletal terms, that he was disqualified from the cadet selection process because during that process he revealed and his doctor verified a record of diabetes. See Doc. 1-1 at ¶ 16. The court also understands Davis to allege that the diabetic condition noted in State Police records placed substantial limitations on a major life activity. Regardless of what Davis will actually be able to prove, at this point his allegations are sufficient to survive Rule 12(b)(6).

### c. "Regarded As" Disabled

To meet the "regarded as" standard, a plaintiff cannot merely show that the employer perceived him as somehow limited; he must prove the employer regarded him as disabled within the meaning of the ADA. Sullivan v. Nieman Marcus Group, 358 F.3d 110 (1st Cir. 2004). To make a *prima facie* showing, the Plaintiff must establish: 1) he was regarded by the Defendants as having an impairment; and 2) the impairment, if it matched the Defendants' perception, would limit one or more of the plaintiff's major life activities. Deas v. River West, L.P., 152 F.3d 471, 479 (5th Cir. 1998).

As the court already has indicated, Davis' burden at this stage of the litigation is minimal. To state a "regarded as"

claim, he must allege only that the Defendants regarded him as having an impairment when the conditional offer of employment was withdrawn, and that the impairment as it was perceived would have placed substantial limitations on one or more major life activities.  Taking Davis' allegations as true and affording him all reasonable inferences, the court is constrained to conclude that his pleadings are sufficient to survive the Defendants' Motion to Dismiss.

### d.  Retaliation

Davis alleges retaliation under the ADA and the Rehabilitation Act.  In order to state a *prima facie* claim of retaliation under either Act, a plaintiff must allege that: 1) he engaged in a protected activity; 2) the employer took adverse employment action either after or contemporaneous with the protected activity; and 3) there was a causal connection between the employee's protected activity and the adverse employment action. Shaner v. Synthes, 204 F.3d 494 (3d Cir. 2000).  Davis' Complaint is devoid of allegations sufficient to support a retaliation claim.  Given that the only employment action alleged is the Plaintiff's exclusion from the cadet selection process, the court cannot conceive of any set of facts that would entitle Davis to recover for retaliation.  Accordingly, the retaliation claim should be dismissed with prejudice.

     e. <u>The Failure to Accommodate</u>

  To establish a *prima facie* claim for failure to accommodate, a plaintiff must show:  1) he has a disability; 2) the employer had notice of that disability; 3) he is able perform the essential functions of the relevant position with reasonable accommodation; and (4) the employer failed to provide reasonable accommodation.  *See* <u>Johnson v. McGraw-Hill Companies</u>, 451 F. Supp. 2d 681 (W.D. Pa. 2006) (McVerry, J.).

  The employer's duty to provide a reasonable accommodation is triggered by the employee's accommodation request.  "Once a qualified individual with a disability has requested . . . accommodation, the employer must make a reasonable effort to determine the appropriate accommodation."  29 C.F.R. Pt. 1630, App. §1630-9; *see also* <u>Williams v. Philadelphia Housing Auth. Police Dept.</u>, 380 F.3d 751, 770 (3d Cir. 2004).

  Davis does not allege that he needed, requested, or the Defendants should have known he sought accommodation.  Furthermore, there is no indication in the Complaint that accommodation was even possible.  In light of these deficiencies, Davis' accommodation claim should be dismissed.

**<u>CONCLUSION</u>**

  For the reasons stated above, the Defendants' renewed request for a change of venue (*see* Doc. 16) should be denied, and their Motion to Dismiss (Doc. 16) should be granted in part and

denied in part, as follows.  The District Court should dismiss with prejudice:  (1) all claims made under the PHRA; 2) the claims for monetary relief made pursuant to the ADA and for punitive damages under the ADA and the Rehabilitation Act;[4] (3) the claims for prospective relief under the ADA against the Commonwealth of Pennsylvania and the Pennsylvania State Police; (4) the claims alleging that Davis was a victim of retaliation in violation of the ADA and the Rehabilitation Act; and (5) the claims alleging that the Defendants failed to accommodate the Plaintiff's disability under the ADA and the Rehabilitation Act.

The Motion should be denied regarding:  (1) prospective relief against Defendant Miller for alleged discrimination in violation of the ADA; 2) the claims of discrimination in violation of the Rehabilitation Act.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by April 23, 2007.  Responses to objections are due by May 3, 2007.

April 5, 2007

Francis X. Caiazza
U.S. Magistrate Judge

---

[4]  The Plaintiff concedes that punitive damages are not available under the statutes.  See Pl.'s Opp'n Br. at 17.

cc (via email):

Gregory G. Paul, Esq.
Robert A. Willig, Esq.