IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIS LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1162 |
| | ) | |
| COMMONWEALTH OF | ) | Judge David S. Cercone |
| PENNSYLVANIA; PENNSYLVANIA | ) | Magistrate Judge Cathy Bissoon |
| STATE POLICE; and JEFFREY B. | ) | |
| MILLER, in his official capacity as | ) | |
| COMMISSIONER OF THE | ) | |
| PENNSYLVANIA STATE POLICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 28) be granted, as discussed below.

### II. REPORT

**BACKGROUND**

**A. Procedural Background**

Plaintiff, Davis Lewis, commenced this disability discrimination action against the Commonwealth of Pennsylvania ("Commonwealth"), the Pennsylvania State Police ("PSP"), and Jeffrey B. Miller ("Miller") (collectively, "Defendants"). Plaintiff alleges that Defendants discriminated against him on the basis of a disability – Type II Diabetes – in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951,

et seq. ("PHRA") when the PSP declined to accept him into its Cadet Program through which he would have trained to become a Pennsylvania State Trooper. See generally Compl. (Doc. 1).

On November 30, 2006, Defendants filed a Motion to Dismiss in which they asserted that venue was improper and that Plaintiff failed to state a claim upon which relief could be granted. After Defendants' Motion was denied without prejudice, Defendants re-filed their Motion to Dismiss on February 23, 2007. By Report and Recommendation dated April 5, 2007, Magistrate Judge Francis X. Caiazza recommended that Defendants' Motion for Change of Venue be denied. As to Defendants' Motion to Dismiss, Judge Caiazza recommended that it be granted in part and denied in part. Specifically, Judge Caiazza recommended dismissal of the following: (1) all claims under the PHRA; (2) all claims for monetary relief under the ADA and for punitive damages under the ADA and Rehabilitation Act; (3) all claims for prospective relief under the ADA against Defendants Commonwealth of Pennsylvania and the Pennsylvania State Police; (4) all claims of retaliation under the ADA and Rehabilitation Act; and (5) the failure to accommodate claim under the ADA and Rehabilitation Act. (Doc. 19.) By Order dated April 27, 2007, the District Court adopted the Report and Recommendation as the Opinion of the Court and dismissed the above claims. (Doc. 20.)

On March 31, 2008, Defendants filed a Motion for Summary Judgment (Doc. 28) seeking dismissal of the remaining claims, namely Plaintiff's ADA claim against Defendant Miller and Plaintiff's claims against all Defendants under the Rehabilitation Act ("Defendant's Motion"). Defendants' Motion is now ripe for adjudication.

**B.** **Factual Background**

In 2004, Plaintiff applied to the Cadet Program at the PSP to train to become a Pennsylvania State Trooper. See Defendants' Statement of Material Facts Not In Dispute (Doc. 30) ("Defs.' Facts") at ¶ 61. The Cadet Program is a precursor to becoming a

Pennsylvania State Trooper. (Defs.' Facts at ¶¶ 11-12.) An applicant who is admitted to the Cadet Program must attend the PSP Academy for six months of extensive training. Id. at ¶ 11. Upon successful completion of the six-month training program, a cadet becomes a Pennsylvania State Trooper. Id. at ¶ 12.

To enter into the PSP's Cadet Program, applicants first must undergo a written and oral examination. Id. at ¶¶ 2, 5. If an applicant successfully completes the written and oral examination, that applicant is extended a conditional offer of employment. Id. at ¶¶ 6-7. The offer is conditioned upon the applicant successfully completing a series of additional examinations or requirements, including the following: (1) a physical fitness test; (2) polygraph examination; (3) background investigation; (4) medical evaluation; and (5) psychological examination. Id. at ¶¶ 7-8. The medical evaluation is conducted by a PSP doctor who meets with the applicant, considers the applicant's medical history and makes an assessment as to the applicant's fitness to engage in the Cadet Program. Id. at ¶¶ 13-21. If the PSP doctor determines that the candidate is not fit to engage in the Cadet Program, the doctor must present the determination and recommendation to the PSP Medical Review Board. Id. at ¶ 22. The doctor not only is required to explain, in writing, the reasons for disqualifying the candidate from the selection process, but also is required to appear before the Medical Review Board to orally explain the recommendation. Id. at ¶¶ 25-26. The Medical Review Board makes the final decision as to the applicant's fitness to proceed in the Cadet Program. Id. at ¶¶ 28-29.

Plaintiff passed both the written and oral examinations. Id. at ¶ 62. On October 6, 2004, Defendants extended to Plaintiff a conditional offer of employment for the position of Pennsylvania State Police Cadet. Id. at ¶ 63. After receiving his conditional offer, Plaintiff proceeded with the additional requirements and passed the physical fitness test, polygraph

examination and background investigation. Id. at ¶ 64. Plaintiff then began the process of undergoing the medical evaluation and psychological screening. Id. at ¶¶ 65-66.

On April 29, 2005, Plaintiff underwent his medical evaluation at the PSP Academy in Hershey, Pennsylvania with the PSP's Senior State Police Medical Officer, Dr. Michael S. Marrone. Id. at ¶¶ 66, 71. During this evaluation, Dr. Marrone discussed with Plaintiff his medical issues, specifically, his Type II Diabetes. Id. at ¶¶ 72-73. Dr. Marrone asked Plaintiff to submit additional medical documentation pertaining to his diabetes, including all medical records and tests from the time that he was diagnosed to the present. Id. Plaintiff subsequently forwarded some of the requested additional information related to his diabetes. Id. at ¶ 76.

Dr. Marrone evaluated Plaintiff's medical condition and, based on the information he received and reviewed, concluded that Plaintiff did not have sufficient control of his diabetes and that he was at risk for a hypoglycemic episode. Id. at ¶ 93. As a result, Dr. Marrone recommended that Plaintiff be disqualified from entry into the PSP Cadet Program as he was "unfit to train as a cadet or to carry out the duties and responsibilities of a Pennsylvania State Trooper." Id. at ¶ 83. In his recommendation, Dr. Marrone specifically cited the nature of, and demands imposed by, the Pennsylvania State Trooper position and the manner in which Plaintiff's control of his diabetes and risk for hypoglycemic episodes could impact his ability to perform his job safely. Id.

On July 28, 2005, the PSP Medical Review Board convened to review Dr. Marrone's recommendation. Id. at ¶ 94. The Medical Review Board adopted Dr. Marrone's recommendation and removed Plaintiff from further consideration for the Cadet Program. Id. at ¶¶ 96-97. Plaintiff subsequently sought reconsideration of the determination, but the PSP declined review.

**ANALYSIS**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In their Motion, Defendants contend that they are entitled to judgment as a matter of law because Plaintiff cannot establish his prima facie case of disability discrimination under either the ADA or the Rehabilitation Act. The issue before this Court is whether Plaintiff has set forth sufficient evidence to establish that he is "disabled" within the meaning of the ADA and/or Rehabilitation Act. As will be discussed infra, the Court concludes that Plaintiff has not proffered sufficient evidence to create a genuine issue of material fact on this issue and, therefore, summary judgment is proper for Defendants on all of Plaintiffs' remaining claims.

To show a violation of the ADA or the Rehabilitation Act,[1] a plaintiff must first establish a prima facie case of discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); 29 U.S.C. § 791, et seq. To state a prima facie case, a plaintiff must establish the following:

> (1) he has a disability;
>
> (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and
>
> (3) he nonetheless suffered an adverse employment action as a result of discrimination.

---

[1] "Whether suit is filed under the Rehabilitation Act or under the [Americans with] Disabilities Act, the substantive standards for determining liability are the same." McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995); 29 U.S.C. § 794(d).

Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000); Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

A plaintiff may establish that he suffers from a "disability" if he can show that he:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;
>
> (ii) has a record of such an impairment; or
>
> (iii) is regarded as having such an impairment.

42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B). Plaintiff contends that he is disabled under the first and third bases. That is, Plaintiff contends that he has a "physical or mental impairment which substantially limits one or more of [his] major life activities," e.g., an actual disability, or in the alternative, that Defendants "regarded" him as having such an impairment.

The Court finds that Plaintiff is not disabled under either definition of disability and, therefore, cannot establish the first element of his prima facie case. Because Plaintiff cannot establish the first and fundamental element of his prima facie case, this Court recommends that Defendants' Motion for Summary Judgment be granted in its entirety.[2]

### A. **Actual Disability**

To establish a disability under the first definition above, a plaintiff first must show that he has a physical or mental impairment that "limits a major life activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 690 (2002). It is noteworthy that merely establishing that the plaintiff suffers from an impairment is insufficient. Id. Rather, a plaintiff must "demonstrate that the impairment limits a major life activity." Id. (emphasis added). Moreover, the phrase "major life activities" refers only "to those activities that are of central

---

[2] Because the Court recommends dismissal on the grounds that Plaintiff cannot establish the threshold element of his prima facie that he is disabled, the Court does not reach the issue of whether Plaintiff can establish the second element of his case, i.e., that he was "otherwise qualified" for the position at issue.

importance to daily life." Id. at 691. The regulations promulgated pursuant to the Rehabilitation Act provide that "major life activities" may include such activities as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 45 C.F.R. § 84.3(j)(2)(ii). A plaintiff "must further show that the limitation on the major life activity is 'substantia[l].'" Toyota Motor Mfg., 122 S. Ct. at 690 (quoting 42 U.S.C. § 12102(A)) (alteration in original). In sum, to be substantially limited in a major life activity:

> an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term.

Id. (citing 29 C.F.R. § 1630.2(j)(2)(ii) – (iii)).

The above definition "clearly precludes impairments that interfere in only a minor way with performance of a major life activity from qualifying as disabilities." Toyota Motor Mfg., 122 S. Ct. at 691; see also Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565 (1999) (explaining that a "mere difference" does not amount to a "significant restrict[tion]" on a major life activity). As the Supreme Court explained in Toyota Motor Manufacturing, "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." Id. at 691.

Courts must determine whether an individual has a disability on a case-by-case basis. Id. at 692; Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999). Thus,

> [i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, [plaintiffs must] 'prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.

Toyota Motor Mfg., 122 S. Ct. at 691-92 (quoting Albertson's, Inc., 527 U.S. at 567) (third and fourth alterations in original).

Plaintiff here asserts that his diabetes substantially limits him in the major life activities of eating, caring for himself and metabolizing food. Defendants contend that the record evidence establishes that he is not substantially limited in any major life activity. The Court agrees with Defendants.

Contrary to Plaintiff's argument, the record evidence establishes that Plaintiff has no trouble eating, caring for himself or metabolizing his food. Plaintiff testified that he "tr[ies] to stay away from sweets," has cut salt out of his diet and checks his blood sugar occasionally. (Defs.' Ex. R (Doc. 31), Deposition of Plaintiff Davis Lewis at 26.) Plaintiff also testified that he otherwise eats what he wants, including oatmeal, eggs, bananas, yogurt, salads, chicken, hamburgers and fries, and cheese and salami sandwiches. Id. Plaintiff further admits that he has "no problem driving, caring for himself, feeding himself, walking, seeing, hearing, running, digesting food, speaking, breathing, or learning …" (Defs.' Facts at ¶ 132; Pl's Response to Defs.' Facts at ¶ 132 (Plaintiff states that it is "[a]dmitted that Mr. Lewis testified that he has no problem.")).

The Court finds that there is no evidence that Plaintiff is substantially limited in the major life activities of eating or caring for himself. See Shultz v. Potter, 142 Fed. Appx. 598, 2005 WL 1841871, at *1 (3d Cir. 2005) (affirming dismissal of plaintiff's disability claim and noting that plaintiff's diabetes "has no significant effect on her diet: it merely requires her 'to watch what she eats more carefully,' have a snack if her blood sugar is low, and take insulin if it becomes too high"); Collado v. United Parcel Svc., 419 F.3d 1143, 1155-56 (11th Cir. 2005) (plaintiff with insulin-dependent diabetes did not establish that he was disabled where he only had to watch what he had to eat, but otherwise could function normally).

Likewise, Plaintiff's assertion that he is substantially limited in his ability to "metabolize food" is without merit. Even assuming "metabolizing food" is materially different from "eating," and further assuming that "metabolizing food" is a major life activity,[3] Plaintiff has proffered no evidence to establish that his ability to metabolize food is "substantially limited." Plaintiff states that "his pancreas simply cannot metabolize food compared to the average person," but cites to absolutely no record evidence to substantiate this assertion. Given Plaintiff's previously referenced testimony concerning the relatively few limitations on his diet, without more, no reasonable jury could conclude that Plaintiff is substantially limited in the major life activities of "metabolizing food."

Because Plaintiff has proffered no evidence demonstrating that his impairment – Type II Diabetes – substantially limits any major life activity, there is no material issue of fact on the issue of whether Plaintiff is actually disabled within the meaning of the ADA. As a matter of law, Plaintiff is not disabled as defined by the ADA and/or Rehabilitation Act.

### B. "Regarded As" Disabled

In the alternative, Plaintiff asserts that he has been "regarded as" disabled from the major life activity of working.[4] To meet the "regarded as" standard, a plaintiff cannot merely show that

---

[3] Plaintiff cites to and relies upon the Third Circuit's decision in Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378 (3d Cir. 2004) to support the proposition that he is substantially limited in the ability to metabolize food. In Fiscus, however, the Third Circuit addressed a situation involving an individual suffering from end-stage renal disease who was ***unable*** to process and eliminate waste from the blood. The Court concluded that "processing and eliminating waste from the blood qualifies as a major life activity because, in their absence, death results." Id. at 386. Plaintiff certainly has not produced evidence akin to that before the court in Fiscus and, therefore, Fiscus does not aid Plaintiff's argument that he is substantially limited in his ability to metabolize food.

[4] In his Opposition, Plaintiff asserts that Defendants also regarded him as disabled in the major life activities of "thinking," "concentrating," and "cognitive functioning." (Pl's Brief at 8.) However, other than a cursory recitation of legal authority supporting the proposition that these activities may be considered "major life activities," Plaintiff has proffered no evidence establishing that Defendants regarded him as disabled as to these major life activities. These mere allegations, without more, are insufficient to create a genuine issue of material fact for summary judgment purposes. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (noting that "[i]n response to a summary judgment motion," the plaintiff cannot rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes

the employer perceived him as somehow limited; he must prove the employer regarded him as disabled within the meaning of the ADA or Rehabilitation Act. See Tice v. Centre Area Trans. Auth., 247 F.3d 506, 514 (3d Cir. 2001). Thus, a plaintiff must demonstrate either that (1) despite having no impairment at all, defendant erroneously believes he has an impairment that substantially limits a major life activity or (2) he has a non-limiting impairment that the defendant mistakenly believes substantially limits a major life activity. Id. In either of these scenarios, it is not sufficient merely to show that defendant regarded plaintiff as having an impairment; rather, defendant must have regarded plaintiff as having a substantially limiting impairment. See Deane v. Pocono Med. Ctr., 142 F.3d 138, 143 (3d Cir. 1998); Tice, 247 F.3d at 514.

Where, as here, a plaintiff asserts that he was regarded as being substantially limited in the major life activity of working, the plaintiff must demonstrate that he was regarded as being "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" Sutton, 527 U.S. at 492 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Thus, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." Murphy v. United Parcel Svc., 527 U.S. 516, 523 (1999) (citing 29 C.F.R. § 1630.2(j)(3)(i)).

Here, Plaintiff has failed to show that Defendants "regarded [him] as precluded from more than a particular job." Murphy, 527 U.S. at 523. Rather, the evidence presented by the parties demonstrates that Defendants only disqualified him from a single, narrow position: cadet

---

of the summary judgment motion will be taken to be true") (citation omitted). For this reason, the Court focuses only on Plaintiff's allegations that Defendants regarded him as disabled in the major life activity of working.

or Pennsylvania State Trooper.[5] In his recommendation to the Medical Review Board, Dr. Marrone stated that Plaintiff was not suited for the single and narrow position of cadet or State Trooper. (Declaration of Michael S. Marrone ¶¶ 25-32; Defs.' Ex. L (Doc. 31) ("[I]t is my medical opinion that Mr. Lewis N. Davis II [sic] is unfit to train as a cadet or to carry out the duties and responsibilities of a Pennsylvania State Trooper.")). Dr. Marrone premised his opinion on his individualized assessment that Plaintiff's diabetes was uncontrolled and that he faced the risk of hypoglycemia. Id. In support of his conclusion, Dr. Marrone cited the specific demands that the position imposed and explained why uncontrolled diabetes and the risk of a hypoglycemic episode could pose safety concerns for the Trooper and the public. Id. In his written assessment to the Medical Review Board, Dr. Marrone stated:

> Troopers are required to work rotating shifts and are often called on to work extended shifts and overtime. Regular mealtimes and opportunities for self-testing are not always possible. Police work, by its very nature is unpredictable and sometimes dangerous. Any condition that can quickly render a police officer confused or unconscious could put that trooper, fellow troopers, or the public in danger. This risk is even higher in a diabetic individual who is not under good control and who has experienced hypoglycemic episodes in the past. Such is the case with Mr. Lewis.
>
> For these reasons, it is my medical opinion that Mr. Lewis N. Davis, II [sic] is unfit to train as a cadet or to carry out the duties and responsibilities of a Pennsylvania State Trooper. I make this statement with reasonable medical certainty.

(Defs.' Ex. L.) The Medical Review Board adopted Dr. Marrone's recommendation. (Defs.' Ex. 0 (Doc. 31).)

---

[5] The Court recognizes that Plaintiff had applied to the Pennsylvania State Police's cadet program – the sole purpose of which is to train individuals to become Pennsylvania State Troopers. The parties do not appear to contend that the cadet position differed from the State Trooper position, or that the two positions are separate positions. For purposes of disposition of Defendant's Motion, the Court is treating the positions of "cadet" and "State Trooper" as one and referring to them interchangeably. Even if they were not, however, the analysis would remain the same.

In conveying this conclusion to Plaintiff, Defendants explained to Plaintiff that he only was being disqualified from further consideration for the specific, narrow and singular position of Pennsylvania State Police Cadet. (Defs.' Ex. P (Doc. 31).) It is undisputed that there was no other position with Defendants for which Plaintiff applied or was otherwise being considered.

There also is no evidence that Defendants regarded Plaintiff as disabled from working in a class of jobs or in a broad range of jobs in a class. Although Plaintiff asserts that "Defendants' statements alone establish that Defendants regarded Plaintiff as disabled from working a class of jobs or a broad range of jobs," Plaintiff does not identify these statements or cite to such statements in the record.

The Court initially notes that Plaintiff has not clearly defined the "class of jobs" or "broad range of jobs within a class" from which Defendants purportedly regarded him as disabled. To the extent Plaintiff asserts that the job of cadet or state trooper is a "class of jobs" or "broad range of jobs within a class," such an argument lacks merit. See Rossbach v. City of Miami, 371 F.3d 1354, 1361 (11th Cir. 2004) (concluding that the job of "police officer" is not a broad range or class of jobs) (collecting cases from other circuits, including the First, Second, Fourth and Fifth Circuit Courts of Appeal); Van v. Miami-Dade County, 509 F. Supp. 2d 1295, 1301 (S.D. Fla. 2007) (concluding that position of "correctional officer" constitutes a "single, particular job, which cannot constitute a substantial limitation of the major life activity of working."). The Court further notes that Plaintiff's vocational expert appears to define the class as one of "protective and medical/health services." Plaintiff does not expound upon this "class of jobs" and, significantly, cites to no legal authority supporting the proposition that this is a class of jobs or a broad range of jobs within a class within the meaning of the ADA.

In any event, the Court finds that the record evidence, even when viewed in the light most favorable to Plaintiff, demonstrates only that Defendants regarded Plaintiff as unable to perform the single, specific job of cadet or state trooper. Moreover, the evidence shows that Defendants' concerns were tied specifically to the singular position of cadet or Pennsylvania State Trooper. There is no evidence upon which a reasonable jury could conclude that Defendants regarded Plaintiff as disabled in a "class" of jobs or a "broad range" of jobs within a class.

Defendants' perception that Plaintiff could not perform a single, specific job does not demonstrate that Defendants regarded Plaintiff as substantially limited in the major life activity of working. See Hershgordon v. Pathmark Stores, Inc., No. 07-2731, 2008 WL 2637192, at *2 (3d Cir. July 7, 2008) (affirming dismissal of "regarded as" claim because, among other reasons, "an employer only regards a person as disabled if it determines that the person cannot perform a wide range of jobs" and record demonstrated that employer only considered plaintiff to be unable to perform "his job of night store manager"); Cetera v. CSX Transp., Inc., 191 Fed. Appx. 151, 152 (3d Cir. 2006) (affirming dismissal of "regarded as" ADA claim and rejecting plaintiff's argument that because he was denied a freight conductor position on the basis of an inability to pass the medical examination or complete the physically demanding training program, he also was regarded as "unable to perform the physical demands of other moderate or heavy labor positions" because the argument "ignores the fact that [plaintiff] was enrolled in a specific class for freight conductors and was not being considered for employment by CSX for any other position."); see also Giordano v. City of New York, 274 F.3d 740, 749 (2d Cir. 2001) (affirming dismissal of ADA claim brought by former New York City police officer who had been removed because a medical condition required him to take Coumadin regularly which prompted employer's concerns about officer experiencing trauma; court found that plaintiff, at best, only

established that "defendants regarded him as disabled from police or other investigative security jobs that involve a substantial risk of physical confrontation" and, therefore, could not establish that he was regarded as substantially limited in the major life activity of working); Freeman v. BNSF Railway Co., 558 F. Supp. 2d 1181, 1188 (D. Kan. 2008) ("[T]he evidence in the factual record before the court here reflects only that BNSF believed that plaintiff's health condition disqualified him from BNSF train service jobs based solely on the specific safety concerns inherent in those positions. Plaintiff did not apply for any other jobs at BNSF and there is no evidence that BNSF believed that plaintiff's diabetes would disqualify him from any other jobs at BNSF. Moreover, there is no evidence that BNSF believed that plaintiff would be disqualified from any jobs outside the confines of BNSF."); Van, 509 F. Supp. 2d at 1301 (granting summary judgment where plaintiff with diabetes argued he was regarded as disabled because he was precluded from working as a correctional officer, noting that the evidence only demonstrated that he was precluded from the "specific position of correctional officer" and that there was "no evidence in the record that the County perceived [plaintiff] as precluded from any position apart from correctional officer while he demonstrated an elevated HeA1c level").

The only other evidence Plaintiff offers in support of the proposition that Defendants regarded him as disabled from a class of jobs or a broad range of jobs is the opinion of a vocational expert, Daniel M. Rappucci. Standing alone, however, Mr. Rappucci's opinion is insufficient to create an issue of material fact as to the issue of whether Defendants regarded Plaintiff as disabled in the major life activity of working.[6]

---

[6] The Court notes that Mr. Rappucci's expert report does not comply with Federal Rule of Procedure 56(e) and, therefore, may not be admissible for purposes of opposing Defendants' Motion. Contrary to the requirements of Rule 56(e), Mr. Rappucci's expert report is unsworn and unverified. It also is not attached to a declaration, affidavit, or deposition testimony through which Mr. Rappucci's representations are verified. As such, the report technically is inadmissible for purposes of opposing summary judgment and properly may be excluded from consideration. See Fowle v. C&C Cola, 868 F.2d 59, 67 (3d Cir. 1989) (excluding expert report from consideration because the "substance of th[e] report was not sworn to by the

Significantly, Mr. Rappucci's opinion stands on a flawed foundation. While Mr. Rappucci purports to focus his analysis on Plaintiff's past work history and the essential job functions Dr. Marrone identified as being potentially implicated by Plaintiff's uncontrolled diabetes and risk of hypoglycemia, rather than analyze the specific essential job functions Dr. Marrone identified as problematic, Mr. Rappucci converts those very specific essential job functions into broad generic functions, including "performing under stress," "climbing," "balancing," "crawling," and "driving-operating." In other words, Mr. Rappucci has culled these broad functions from their specific context – indeed, ignoring that context – in an effort to suggest that Defendants contemplated that Plaintiff was more broadly restricted than they have asserted here. The problem with this theory is that neither Plaintiff nor Mr. Rappucci has established that Defendants ever expressed any concern with Plaintiff's abilities to perform these broad generic functions. To the contrary, the record shows that Defendants' concerns focused on several of the contextually specific essential functions of the State Trooper position, as enumerated by the Commonwealth.[7]

The result of Mr. Rappucci's flawed analysis is that, when applied, Defendants purportedly regarded Plaintiff as unfit for such positions as "Birth Attendant," "Prosthetists,"

---

alleged expert" and, therefore, "the purported expert's report is not competent to be considered on a motion for summary judgment."); Bock v. CVS Pharmacy, Inc., No. 07-CV-412, 2008 WL 3834266, at *3 (E.D. Pa. Aug. 14, 2008) (deciding summary judgment motion without consideration of expert report because evidence consisted of an addendum to expert's original report and expert offered "no affidavit authenticating the addendum or the original report, and points to no supporting deposition testimony. Such material is inadmissible, and the Court will therefore 'decide this case without reference to the unsworn expert's report.'") Even reaching the substance of Mr. Rappucci's report, it is insufficient to defeat Defendants' entitlement to summary judgment. See discussion infra.

[7] Additionally, Mr. Rappucci purports to impose the requirements of the State Trooper position to a host of other positions without first establishing that those positions have requirements identical to the State Trooper position. See Leitch v. MVM, Inc., 538 F. Supp. 2d 891, 899-900 (E.D. Pa. 2007) (approvingly noting the decision of another court in a case involving the same expert's testimony (i.e., Mr. Rappucci's testimony) in which that court concluded that the expert's testimony was insufficient because he "impute[d] the requirements of the [Court Security Officer] job to other jobs without proffering evidence that the requirements [were] the same . . . .") (citing Strolberg v. AKAL Sec. Co., 2005 WL 5629026 (D. Idaho 2005), rev'd in part and aff'd in relevant part, Strolberg v. AKAL Sec. Co., 210 Fed. Appx. 683 (9th Cir. 2006)).

"Medical Equipment Preparers," "Boiler Operators," and "Funeral Attendant," just to name a few. There is no evidence that the Pennsylvania State Police ever contemplated any of these positions – let alone Plaintiff's ability to perform such positions – when assessing Plaintiff's suitability for the Cadet Program or the State Trooper position. Mr. Rappucci's opinion, standing alone, is insufficient to raise an inference that Defendants regarded Plaintiff as disabled in a class of jobs or broad range of jobs in a class.[8] See Gasser v. Dist. of Columbia, 442 F.3d 758, 764-65 (D.C. Cir. 2006) (finding that vocational expert's testimony was insufficient to show that defendant regarded plaintiff as disabled because expert's analysis was flawed insofar as he examined the functions plaintiff performed, e.g., "heavy duty" or "medium type" jobs, rather than the "reason [he] was precluded from being a full-duty officer," e.g., potential for trauma); see also Sutton, 527 U.S. at 493 ("Even assuming for the sake of argument that the adoption of similar vision requirements by other carriers would represent a substantial limitation on the major life activity of working, the argument is nevertheless flawed. It is not enough to say that if the physical criteria of a single employer were *imputed* to all similar employers one would be regarded as substantially limited in the major life activity of working *only as a result of this imputation*.") (emphasis in original); Giordano, 274 F.3d at 749-50 (finding plaintiff's affidavit insufficient to raise an issue of fact because plaintiff's "assumption that his disqualification from the specific job of an NYPD police officer will preclude him from working in related fields – or that defendants perceived him as such – is, as the district court noted, 'speculation and

---

[8] The Court notes that in Deane v. Pocono Medical Center, 142 F.3d 138 (3d Cir. 1998), the Third Circuit concluded that an issue of fact existed as to whether the employer regarded the plaintiff as disabled in a class of jobs or broad range of jobs based on evidence that included the report of a vocational expert. Unlike in the present case, in Deane, the court recounted several other pieces of evidence that gave rise to material issues of fact. Specifically, there was evidence showing confusion about the extent of plaintiff's "physical capacity with regard to pushing, pulling, and lifting;" evidence demonstrating that the employer did not understand the limitations plaintiff's wrist injury placed on her ability to perform her job; and evidence showing the employer relied only a phone conversation with plaintiff to assess her injuries and ability to perform her job. Id. at 144-45. Such evidence has not been presented here.

conjecture,' which will not suffice 'to defeat a motion for summary judgment.'") (citation omitted). Without more, no reasonable jury could conclude that Defendants regarded the Plaintiff as substantially limited in his ability to perform either a class of jobs or a broad range of jobs. Plaintiff, therefore, is not disabled under the "regarded as" definition of disability under the ADA and/or the Rehabilitation Act.

One final contention that Plaintiff raises is worth a brief discussion. Plaintiff focuses much of his energy on the assertion that Defendants are mistaken as to the severity of his diabetes, including the level of control over his diabetes and the risk of hypoglycemia. For example, Plaintiff offers the opinion of his doctor that he has good control over his diabetes and insists that, despite Dr. Marrone's reading of his medical records, he has never experienced a hypoglycemic episode. (Pl's Brief at 12.) Plaintiff, then, seeks to expose the alleged inaccuracies and fallacies in Dr. Marrone's conclusions. Based on this, then, Plaintiff contends that issues of fact exist as to whether Plaintiff's diabetes is under control and whether he experienced a hypoglycemic episode. Even if these facts are in dispute, they are not material to the issue of whether Plaintiff is disabled within the meaning of the law.

First, that Plaintiff or his doctors may disagree with Dr. Marrone's conclusions is insufficient to create a genuine issue of material fact on the critical issue here, namely whether Defendants regarded Plaintiff as disabled in the major life activity of working by perceiving him as unable to perform a class of jobs or a broad range of jobs in a class. See, e.g., Wilson v. Pennsylvania State Police Dep't, No. 94-CV-6547, 2004 WL 875573, at *4 n. 12 (E.D. Pa. Mar. 19, 2004) ("[I]t is not this Court's function to analyze the validity of Defendants' standards. Nor is this Court tasked with deciding whether Defendants' standards are well-supported, right-

thinking, or the best criteria available. The only question for this Court is whether Defendants view Plaintiffs as substantially limited in their performance of major life activities.").

Second, although the Third Circuit has expressed that "a 'regarded as' plaintiff can make out a case if the employer is innocently wrong about the extent of his or her impairment," it also has made clear that "[a]n employer who simply, and erroneously, believes that a person is incapable of performing a particular job will not be liable under the ADA." Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 191-92 (3d Cir. 1999). Thus, the foregoing analysis is not altered simply because an employer may be mistaken about the severity of an employee's impairment. That is, "[l]iability attaches only to a mistake that causes the employer to perceive the employee as disabled within the meaning of the ADA, *i.e.*, a mistake that leads the employer to think that the employee is substantially limited in a major life activity." Id. at 192. As discussed above, Defendants did not perceive Plaintiff as substantially limited in any major life activity, including in the major life activity of working. Thus, even if Defendants were mistaken as to the severity of Plaintiff's diabetes or mistaken as to whether he ever experienced or otherwise ran the risk of experiencing a hypoglycemic episode, such a mistake only led Defendants to disqualify him from the **single** job of State Trooper. The evidence, then, does not raise an issue of fact as to whether Defendants perceived Plaintiff as disabled.

**CONCLUSION**

The Plaintiff has failed to establish the threshold element of his prima facie case, i.e., that he is disabled within the meaning of the law. Accordingly, it is respectfully recommended that the District Court enter summary judgment in favor of Defendants.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by October 10, 2008. Responses to objections are due by October 22, 2008.

                                                    s/ Cathy Bissoon
                                                    Cathy Bissoon
                                                    U.S. Magistrate Judge

September 23, 2008

cc (via email):

Gregory G. Paul, Esq.
Robert A. Willig, Esq.