IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIS LEWIS, | ) | |
| Plaintiff, | ) | 2:06cv1162 |
| v. | ) | Electronic filing |
| COMMONWEALTH OF PENNSYLVANIA; PENNSYLVANIA STATE POLICE; and JEFFREY B. MILLER, in his official capacity as COMMISSIONER OF THE PENNSYLVANIA STATE POLICE, | ) ) ) ) ) ) ) | Judge Cercone Magistrate Judge Bissoon |
| Defendants. | ) | |

## MEMORANDUM ORDER

AND NOW, this 25th day of March, 2009, after de novo review of the record and upon due consideration of [38] the magistrate judge's report and recommendation filed on October 10, 2008, and [39] plaintiff's objections thereto, IT IS ORDERED that [28] defendant's motion for summary judgment be, and the same hereby is, granted. The magistrate judge's report and recommendation as augmented herein is adopted as the opinion of the court.

Plaintiff's objections appear to be centered primarily on the recommendation concerning plaintiff's assertion that defendants regarded him as disabled. See Plaintiff's Objections at 1. But the materials advanced by plaintiff do not undermine the legal analysis set forth in the magistrate's report.

Dr. Saudek's report provides no support for the proposition that defendants regarded plaintiff as substantially limited in a major life activity. In fact, Dr. Saudek's report essentially concedes the crux of Dr. Marrone's evaluation of plaintiff's medical history: that an individual must be "committed to following an appropriate protocol to insure effective self-monitoring and self treatment of their diabetes" and the incidents and medical records reviewed by Dr. Marrone did not conclusively demonstrate that plaintiff's diabetes had been maintained under good control, notwithstanding the contrary certification by plaintiff's treating physician, Dr. Bazron, and Dr. Saudek's disagreement that readings of Hemoglobin A1c below 7% are necessary for

entry into the cadet program. Dr. Saudek questions Dr. Marrone's ultimate evaluation regarding the likelihood of certain risks presented by plaintiff's diabetes. But Dr. Saudek's assessment is based on the premise that plaintiff has been and would be able to keep his diabetes under good control. Dr. Marrone proceeded from the opposite proposition: that plaintiff's medical records revealed that his diabetes had not consistently been maintained under good control. Dr. Saudek's report notes that (1) plaintiff's Hemoglobin A1c readings were not under 7% as required by defendants for entry into the cadet program, (2) up to 4% of the population with readings near or slightly below plaintiff's Hemoglobin A1c readings do experience long-term complications from the disease, and (3) plaintiff's medical records actually referenced at least one episode of hypoglycemia, the very medical phenomenon Dr. Marrone cited as creating an undue risk that could pose safety concerns at a particular moment in the performance of a state trooper's work duties. Dr. Saudek also notes that Hemoglobin A1c readings of about 6.5 to 7% are recommended for people with diabetes and readings above 7% are not in the target range. Thus, Dr. Saudek's report based on a review of plaintiff's medical history does not eliminate the bases for Dr. Marrone's assessment concerning plaintiff's approach to controlling his diabetes, but merely reflects a difference of medical opinion about the degree of risk to be presumed from plaintiff's past medical history. Such evidence does not provide a basis to expand defendants' assessment of the risk presented by plaintiff's past efforts to control his diabetes as it related to one aspect of a trooper's duties into an assessment that defendants perceived plaintiff as substantially impaired in a major life activity.

Furthermore, Dr. Saudek's opinion that the noted 2004 episode probably was not an actual incident of hypoglycemia given the way plaintiff's medication regulates insulin production fails to undermine in any meaningful way Dr. Marrone's determination that the history of plaintiff's Hemoglobin A1c readings and an episode such as the 2004 incident warranted a determination that plaintiff's diabetes had not been maintained under good control and as a consequence certain attendant risks could not be eliminated. Nothing in Dr. Saudek's report is to the contrary. He viewed the risk assessment presented by plaintiff's condition as founded on the opposite premise: that plaintiff was and will be vigilant in following an appropriate protocol to

insure effective self-monitoring and self-treatment of his diabetes and readings above 7% are "not bad." The resulting prediction about plaintiff's ability to control his diabetes and the attendant risks does not provide evidence that defendants perceived plaintiff as substantially impaired in a major life activity.

Dr. Saudek's report similarly fails to provide any evidence to support the proposition that defendants perceived plaintiff as substantially limited in the major life activities of thinking, concentrating, cognitive functioning, or metabolizing food. Dr. Marrone merely cited the safety concerns that could arise in performing the duties of a state trooper in an unpredictable and sometimes dangerous environment if the pressures from rotating shifts, extended shifts or overtime were to be factored into the requirements of maintaining regular meals and self-testing for an individual whose medical records indicated he did not have his diabetes under good control. Extrapolating a number of areas of biological functioning that might also be affected from failing to maintain type II diabetes mellitus under good control does not provide competent evidence from which the finder of fact can conclude that defendants in fact attributed such discriminatory reasoning to plaintiff's impairment when rejecting him for the cadet program. Nor does the record contain any basis to assume that defendants considered anything other than the potential risk from one isolated incident where an individual is not able to meet the immediate demands of the job due to an unpredictable and sometimes dangerous environment. In other words, the record is devoid of any evidence that defendants perceived plaintiff as suffering from limitations such as the inability to think, concentrate or engage in cognitive functioning in a normal work setting and Dr. Saudek's report does not overcome this shortcoming.

Finally, neither Mr. Rapucci nor Dr. Saudek's reports provide competent evidence to support a finding that defendants regarded plaintiff as substantially limited in a class of jobs or a broad range of jobs in various classes as required to establish liability under a "regarded as disabled" approach. While Mr. Rapucci posits that plaintiff would be significantly restricted from performing a broad array of jobs that do not utilize the same training, knowledge, skills and abilities, the magistrate judge exposed the fallacy of logic underlying this analysis, that of a

converse accident or hasty generalization. But even beyond this fallacy, Mr. Rapucci's report simply fails to supply sufficient evidence that defendants engaged in such a form of discriminatory reasoning or such reasoning is properly attributable to defendants. And Dr. Saudek's definition of the medical condition known as hypoglycemia likewise falls short of providing competent evidence that defendants perceived plaintiff as suffering from substantial limitations that would affect his ability to perform the major life activity of working as that concept has been defined under the ADA. Such general conjecture and legal conclusions have long been recognized as inadequate to defeat a motion for summary judgment. See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." ); Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992) (opponent cannot "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs" to defeat summary judgment motion); Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990) (Mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.). Consequently, plaintiff has failed to proffer sufficient evidence to permit a finding that defendants regarded plaintiff's impairment as substantially limiting a major life activity and their summary judgment motion must be granted.

                                                                            s/ David Stewart Cercone  
                                                                           David Stewart Cercone  
                                                                           United States District Judge

cc:     Honorable Cathy Bissoon  
        United States Magistrate Judge

        Gregory G. Paul, Esquire  
        Equality At Work, PLLC  
        409 Broad Street, Ste. 270  
        Sewickley , PA 15143

        Robert A. Willig, Esquire  
        Office of Attorney General  
        Manor Complex, 6th Floor  
        564 Forbes Avenue  
        Pittsburgh , PA 15219