IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIS LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1162 |
| | ) | |
| COMMONWEALTH OF | ) | Judge David S. Cercone |
| PENNSYLVANIA; PENNSYLVANIA | ) | Magistrate Judge Cathy Bissoon |
| STATE POLICE; and JEFFREY B. | ) | |
| MILLER, in his official capacity as | ) | |
| COMMISSIONER OF THE | ) | |
| PENNSYLVANIA STATE POLICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 50) be denied, as discussed below.

### II. REPORT

**BACKGROUND**

**A.    Procedural Background**

Plaintiff, Davis Lewis ("Plaintiff"), commenced this disability discrimination action against the Commonwealth of Pennsylvania ("Commonwealth"), the Pennsylvania State Police ("PSP"), and Jeffrey B. Miller ("Miller") (collectively, "Defendants"). Plaintiff alleges that Defendants discriminated against him on the basis of a disability – Type II Diabetes – in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951, et seq. ("PHRA") when the PSP declined to accept him into its Cadet

Program through which he would have trained to become a Pennsylvania State Trooper. See generally Compl. (Doc. 1).

On February 23, 2007, Defendants filed a Motion to Dismiss. (Doc. 16). By Order dated April 27, 2007, the District Court dismissed all claims asserted by Plaintiff, except for his ADA claim against Defendant Miller and his claims Rehabilitation Act claims against all Defendants. On March 31, 2008, Defendants filed a Motion for Summary Judgment (Doc. 28) seeking dismissal of the remaining claims. The District Court granted summary judgment in favor of Defendants on the basis that Plaintiff did not have a disability and that Defendants did not regard Plaintiff as having a disability, and entered Final Judgment in favor of Defendants on March 24, 2009. (Doc. 40).

Plaintiff appealed to the Court of Appeals for the Third Circuit. In the Court of Appeals, the parties filed a Joint Motion to Remand on the grounds that Defendants-Appellees had "concede[d] that [Plaintiff] has a 'disability' under applicable law." See Joint Motion for Remand Under F.R.A.P. 27, at Court of Appeals for the Third Circuit Docket No. 09-1910.[1] On November 17, 2009, the Court of Appeals granted the parties' Joint Motion for Remand and remanded this matter to this Court. (Doc. 44).

After being denied their request to re-open discovery, Defendants were granted permission to file the instant Motion for Summary Judgment on the issue of whether Plaintiff is "otherwise qualified" for purposes of the remaining ADA and Rehabilitation Act claims. (Text order dated 3/8/2010).

---

[1] While the undersigned continues to believe that Plaintiff has not demonstrated that he has a "disability" under the ADA or Rehabilitation Act, that issue is no longer before the Court as Defendants have conceded that he does.

### B. **Factual Background**

The undersigned previously recounted the facts giving rise to Plaintiff's action, and therefore, will not repeat them in their entirety here. See Report and Recommendation, Sept. 23, 2008 (Doc. 38). A brief background and the facts relevant to Defendants' instant Motion for Summary Judgment follow.

#### Background

In 2004, Plaintiff applied to the Cadet Program at the PSP to train to become a Pennsylvania State Trooper. See Defendants' Statement of Material Facts Not In Dispute (Doc. 52) at ¶ 61 ("Defs.' Facts"). Plaintiff successfully completed preliminary qualification requirements to enter into the Cadet Program, including a written and oral examination, physical fitness test, polygraph examination, and background investigation. Id. at ¶¶ 62-64. Plaintiff then underwent a required medical evaluation, and was disqualified from the Cadet Program due to his type II diabetes. Id. at ¶¶ 83-85, 90-96.

#### Material Facts

For purposes of the Defendants' instant summary judgment motion, the material facts relate to whether Plaintiff's Type II diabetes presented an unacceptably high risk of a future hypoglycemic episode that would render Plaintiff unable to perform the essential functions of a State Trooper. Specifically, Defendants allege that Plaintiff's hemoglobin A1C ("HgbA1C") levels and alleged history of hypoglycemic episodes indicated an unacceptable risk of a future hypoglycemic episode.

Plaintiff's HgbA1C levels, an indicator of blood glucose control, were greater than 7% at the time of Plaintiff's disqualification from the Cadet Program. Id. at ¶¶ 56, 80.[2] According to the PSP's Senior State Police Medical Officer, Dr. Michael S. Marrone, HgbA1C levels greater than 7% indicate poor control over blood glucose levels. Id. at ¶ 58. According to Plaintiff's expert, Dr. Saudek, HgbA1C levels between 7% and 8% are "not quite in target range but not bad." Saudek Expert Report at 3 (Doc. 55-9 at 4). The PSP also does not require Cadet Program candidates to have HgbA1C levels under 7%. Marrone 2d Decl. ¶ 11 (Doc. 53-2 at 81).

Two notes from Plaintiff's doctor, Dr. Bazron, indicate that Plaintiff may have had prior hypoglycemic episodes. The first note, dated September 27, 2004, noted that Plaintiff was feeling tired and had nausea following a workout, and includes two notations stating "? hypoglycemia." (Doc. 53-2 at 57). According to Dr. Saudek, the incident documented in that note was not likely caused by hypoglycemia. Saudek Expert Report at 6 (Doc. 55-9 at 7). According to Dr. Marrone, the incident was associated with vigorous exercise, "when hypoglycemia is most likely to occur in diabetic patients." Marrone 2d Decl. ¶ 12 (Doc. 53-2 at 81).

The second note, dated March 14, 2005, indicates that Plaintiff's HgbA1C levels were "↓ to 7.2" and includes a partially illegible notation, "Had episode of hyp-glycemia." (Doc. 53-2 at 17). According to Defendants, Dr. Marrone is "quite sure" the partially illegible notation says "Had episode of hypoglycemia." Defs.' Facts ¶ 81. Plaintiff denies ever having a hypoglycemic episode. Lewis Dep. 20:12-21:18, 47:17-48:8 (Doc. 55-1 at 21-22, 48-49).

---

[2]    Plaintiff denies that HgbA1C levels are the "best indicator of blood sugar level," see Pl.'s Resp. to Defs.' Facts ¶ 56 (Doc. 55), but Plaintiff's expert agrees that HgbA1C levels are an indicator of "diabetic control." Saudek Expert Report at 3 (Doc. 55-9).

Notably, the PSP also does not preclude individuals who have had prior hypoglycemic episodes from becoming a State Trooper. Defs.' Facts ¶¶ 35-36.

**ANALYSIS**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To show a violation of the ADA or the Rehabilitation Act,[3] a plaintiff must first establish a prima facie case of discrimination. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); 29 U.S.C. § 791, et seq. To state a prima facie case, a plaintiff must establish the following:

> (1) he has a disability;
>
> (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and
>
> (3) he nonetheless suffered an adverse employment action as a result of discrimination.

Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000); Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

The only issued raised by Defendants' summary judgment motion relates to the second element of a prima facie case of discrimination – whether Plaintiff is "otherwise qualified" for the State Trooper position. Determining whether an individual is "otherwise qualified" involves

---

[3] "Whether suit is filed under the Rehabilitation Act or under the [Americans with] Disabilities Act, the substantive standards for determining liability are the same." McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 95 (3d Cir. 1995); 29 U.S.C. § 794(d). Thus, these claims will be treated coextensively.

a two step process considering (1) whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, experience, and skills; and (2) whether the individual can perform the "essential functions" of the position with or without reasonable accommodation. Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998); see also 29 C.F.R. § 1630.2(m) (2004).[4] Defendants concede that Plaintiff satisfies the prerequisites for a State Trooper position. Defs.' Br. at 4 (Doc. 51).

The issue on summary judgment boils down to whether Plaintiff's risk of a future hypoglycemic episode prevents him from performing the "essential functions" of a State Trooper. Defendants do not dispute that Plaintiff is able to perform the essential functions of the job – Defendants argue only that Plaintiff cannot perform those functions during a "hypoglycemic episode." Defs.' Br. at 18-20; see also Marrone 1st Decl. ¶ 30 (Doc. 53-1 at 93) ("I am of the opinion that, except during a hypoglycemic episode and assuming that the issues of Plaintiff's sleep apnea and vision could be resolved, he is capable of performing the essential job functions of a trooper as another similar person who does not have diabetes."). Defendants assert that Plaintiff's Hemoglobin A1C ("HgbA1C") levels greater than 7%, combined with alleged prior hypoglycemic episodes, created a risk of a future hypoglycemic episode that would preclude Plaintiff from safely performing the essential functions of a State Trooper.

Hemoglobin A1C Levels

The parties do not dispute that Plaintiff's HgbA1C levels were greater than 7%, and that HgbA1C levels above 7% are at the very least, "not quite in the target range." The parties, however, dispute the significance of HgbA1C levels above 7%. According to Defendants,

---

[4] The 2004 version of 29 C.F.R. § 1630.2(m) was in effect at the time of Plaintiff's application to the PSP Cadet Program and at the time the PSP disqualified Plaintiff from participation in the Cadet Program.

HgbA1C levels above 7% indicate poor control of blood sugar. Defs.' Br. at 9; Marrone 1st Decl. ¶ 16 (Doc. 53-1 at 88-89). Plaintiff contends that HgbA1C levels between 7% and 8% are "not bad" and do not indicate inadequate control of blood sugar. Pl.'s Br. at 5-6; Saudek Expert Report at 3 (Doc. 55-9 at 4).

Whatever the significance of HgbA1C levels above 7%, the evidence indicates that such levels, standing alone, do not indicate a sufficient risk of future hypoglycemic episode that would preclude an individual from performing the "essential functions" of a State Trooper. According to Defendant PSP's Senior Medical Officer, Dr. Marrone, "it is completely false that an A1C under 7% is a prerequisite for acceptance into the PSP academy training program." Marrone 2d Decl. ¶ 11 (Doc. 53-2 at 81). Thus, in the PSP's own judgment, HgbA1C levels above 7% do not necessarily prevent someone from performing the essential functions of a State Trooper.

Defendants' assertion that Plaintiff was not "otherwise qualified" to be a State Trooper thus depends, in large measure, on whether Plaintiff had a history of hypoglycemic episodes, and whether an HgbA1C level above 7%, in combination with prior hypoglycemic episodes, presents a sufficient risk of a hypoglycemic episode that would prevent Plaintiff from performing the essential functions of a State Trooper.

<u>Plaintiff's Alleged Prior Hypoglycemic Episodes</u>

Defendants assert that Plaintiff had a history of prior hypoglycemic episodes, indicating an unacceptable risk of future hypoglycemic episodes. Defendants rely on testimony of Dr. Marrone interpreting two notes from Plaintiff's doctor, Dr. Bazron, as evidence of Plaintiff's prior history of prior hypoglycemic episodes. Plaintiff denies ever having a prior hypoglycemic episode. Lewis Dep. 20:12-21:18, 47:17-48:8 (Doc. 55-1 at 21-22, 48-49). The undersigned finds that genuine issues of material fact exist as to whether Plaintiff experienced prior

hypoglycemic episodes and, if so, whether Plaintiff had an unacceptably high risk of a future hypoglycemic episode.

Both of the notes relied upon by Defendants are vague and cryptic. The September 27, 2004 note includes two notations that say "? hypoglycemia." Doc. 53-2 at 57. Dr. Saudek explained that the incident documented in that note was not likely caused by hypoglycemia. Saudek Report at 6 (Doc. 55-9 at 7). Dr. Marrone could not conclusively determine whether the September 27, 2004 note documented a hypoglycemic episode, and explained only that the "episode was associated with vigorous exercise, when hypoglycemia is most likely to occur in diabetic patients." Marrone 2d Decl. ¶ 12 (Doc. 53-2 at 81). The "?" preceding "hypoglycemia" in the September 27, 2004 note raises doubts over whether Dr. Bazron determined that Plaintiff had, in fact, experienced a hypoglycemic episode.[5] Drawing all reasonable inferences in Plaintiff's favor, the September 27, 2004 note at most indicates that Plaintiff felt tired and nauseous after a workout, and that those symptoms may have been caused by hypoglycemia. A genuine issue of material fact therefore exists as to whether the episode documented in the September 27, 2004 note was caused by hypoglycemia.

The March 15, 2005 note is partially illegible and includes the notation "hyp-glycemic episode." Dr. Marrone explained that in his opinion, there is no such thing as a "hyperglycemic episode." Marrone 1st Decl. ¶ 12 (Doc. 53-1 at 87). Thus, it is "obvious" to Dr. Marrone that the note says "hypoglycemic episode." Id. at ¶ 22 (Doc. 53-1 at 90-91). At the summary judgment stage, however, all reasonable inferences must be drawn in Plaintiff's favor. In light of

---

[5] According to Dr. Marrone, Dr. Bazron "diagnosed this incident as a hypoglycemic episode as documented in Plaintiff's own medical records." Marrone 2d Decl. ¶ 12 (Doc. 53-2 at 81). Given the lack of testimony from Dr. Bazron in the record and the cryptic nature of the September 27, 2004 note, Dr. Marrone appears to lack any foundation to testify regarding Dr. Bazron's diagnosis of Plaintiff. Dr. Marrone's testimony regarding how Dr. Bazron diagnosed Plaintiff, therefore, is of limited value.

the illegibility of the March 15, 2005 note, the lack of testimony from Dr. Bazron, and Plaintiff's testimony that he has never had an episode of hypoglycemia, a genuine issue of material fact exists as to whether the March 15, 2005 note establishes that Plaintiff had a hypoglycemic episode.[6]

Even if Defendants are correct that Plaintiff had a history of hypoglycemic episodes, a genuine issue of material fact exists as to whether those prior hypoglycemic episodes, combined with HgbA1C levels greater than 7%, create an unacceptably high risk of a future hypoglycemic episode.[7] As the District Court previously recognized, Dr. Saudek's report and Dr. Marrone's assessment of Plaintiff "reflect[] a difference of medical opinion about the degree of risk to be presumed from plaintiff's past medical history." Memorandum Order at 2, Mar. 24, 2009 (Doc. 40). Further, Dr. Bazron, who was aware of Plaintiff's medical condition at the time of the PSP's decision to disqualify Plaintiff from the Cadet Program, concluded that Plaintiff's diabetes would not impair his physical ability to be a State Trooper. Letter from Dr. Herbert C. Bazron to Meredith Yourgal (July 29, 2005) (Doc. 53-2 at 49). Thus, a genuine issue of material fact exists as to the degree of risk indicated by Plaintiff's medical history.

---

[6] Additionally, Defendants have not proffered Dr. Marrone as an expert witness. See Pl.'s Resp. to Defs.' Facts ¶¶ 44-58 (Doc. 55). Questions therefore remain regarding the significance of Dr. Marrone's testimony regarding diabetes generally and whether someone can have a "hyperglycemic episode."

[7] Defendants' own evidence establishes that a prior hypoglycemic episode, even a severe episode, does not necessarily prevent someone from performing the essential functions of a State Trooper. According to Defendants, a State Trooper in 2004 blacked out due to a hypoglycemic episode while on duty. The trooper later returned to duty, indicating that a prior, severe hypoglycemic episode does not present an unacceptable risk of a future hypoglycemic episode that would prevent an individual from performing the essential functions of a State Trooper. Defs.' Facts ¶¶ 35-36. Thus, even if Plaintiff had a history of hypoglycemic episodes, that fact alone would not render Plaintiff unable to perform the essential functions of a State Trooper.

Defendants' Additional Arguments

Defendants' additional arguments warrant only limited discussion. First, Defendants assert that "[a] critical part of this case is the fact that Plaintiff utterly failed to comply with Dr. Marrone's request that he supply the PSP with extensive medical documentation." Defs.' Br. at 4. But whether Plaintiff complied with Dr. Marrone's request for medical documentation has no bearing on whether Plaintiff is "otherwise qualified" to be a State Trooper. Defendants suggest that Plaintiff failed to meet his "burden" of proving to the PSP in 2005 that he was "otherwise qualified." See Defs.' Br. at 6, 8. Defendants appear to conflate the concepts of the burden of proof at trial, see Gaul, 134 F.3d at 580, and the timing for determining whether an individual is "otherwise qualified," see id.; 29 C.F.R. pt. 1630, App. at 368 (2004) ("The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision.").

To the extent Defendants are arguing that Plaintiff has failed to meet his burden of proving he is "otherwise qualified," Plaintiff is not required to prove his case at the summary judgment stage. Defendants, as the moving party, have the initial burden on summary judgment of identifying evidence they believe demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, Plaintiff needs to show only that "a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Azur v. Chase Bank, USA, N.A., 601 F.3d 212, 216 (3d Cir. 2010). As explained above, Plaintiff has presented genuine issues of material fact and a reasonable factfinder could find that Plaintiff is "otherwise qualified" to be a State Trooper.

To the extent Defendants are arguing that they disqualified Plaintiff from the Cadet Program because he failed to comply with requests for medical documentation, rather than

because of his diabetes, this is irrelevant to whether Plaintiff is "otherwise qualified" to be a State Trooper. Additionally, Defendants' suggestions that they disqualified Plaintiff for failure to provide sufficient medical documentation are not supported by the record. For example, Dr. Marrone explained in his July 12, 2005 letter to the PSP Medical Review Board that:

> Although the medical records sent to me contained scant information, I am able to make an informed decision regarding his fitness to become a cadet and trooper. His level of diabetic control as evidenced by his recent Hbg A1c is not good. . . . For these reasons, it is my medical opinion that Mr. Lewis N. Davis II [sic] is unfit to train as a cadet or to carry out the duties and responsibilities of a Pennsylvania State Trooper. I make this statement with reasonable medical certainty.

(Doc. 53-2 at 11-12); see also Letter from Linda M. Bonney to Davis N. Lewis II (Aug. 8, 2005) (Doc. 55-5) ("Upon his review of the medical documentation submitted, the State Police Medical Officer has recommended that you be disqualified based upon your history of diabetes."); Marrone 1st Decl. ¶ 26 (Doc. 53-1 at 91) ("I regarded Mr. Lewis' diabetic condition as precluding him from being able adequately to fulfill the particular requirements of the specific job of Pennsylvania State Trooper and viewed his condition in ways that made him less than ideally suited for that particular job.").

Second, Defendants assert without citing any authority that "the issue in this case is not what an HbgA1C [sic] of 7 means, but rather, whether the PSP's actions were motivated by a discriminatory animus." Defs.' Br. at 12. It is difficult to understand this argument in light of the record evidence and the concession made by Defendants at the Third Circuit. The evidence demonstrates that Defendants did not hire Plaintiff because of his diabetes. Moreover, Defendants have conceded to the appellate court that Plaintiff's diabetes is a disability. It would seem to be quite clear, therefore, that Defendants discriminated against Plaintiff based upon his

disability. The only question that remains is whether Defendants were, in essence, permitted to do so because Plaintiff was not "otherwise qualified."

Third, Defendants rely on medical notes from 2007, two years after the PSP disqualified Plaintiff from the Cadet Program. See Defs.' Br. at 10. Defendants have acknowledged that the determination of whether an individual is qualified is made at the time of the employment decision. See Defs.' Br. at 6; see also Gaul, 134 F.3d at 580; 29 C.F.R. pt. 1630, App. at 368 (2004) ("The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision. This determination . . . should not be based on speculation that the employee may become unable in the future . . . ."). Notes documenting Plaintiff's medical condition in 2007 are irrelevant to determining whether Plaintiff was "otherwise qualified" in 2005.

Fourth, Defendants contend that the District Court should disregard Dr. Saudek's report because the District Court in ruling on Defendants' previous summary judgment motion allegedly "rejected" the report and found that it is "fatally flawed."[8] See Defs.' Br. at 10-11. But the District Court did not previously "reject" Dr. Saudek's report or find that the report is "fatally flawed." The Court found that Dr. Saudek's report was immaterial to whether Defendants regarded Plaintiff as disabled, and explicitly recognized that Dr. Saudek's report "reflects a difference of medical opinion [with Dr. Marrone] about the degree of risk to be presumed from plaintiff's past medical history." (Doc. 40 at 2). Defendants' contentions that the Court previously "rejected" Dr. Saudek's report thus are without merit.

---

8   Defendants also challenge Dr. Rapucci's expert report. Because Plaintiff does not rely on Dr. Rapucci in opposition to the Defendants' present summary judgment motion, the District Court need not consider Dr. Rapucci's report at this time.

Fifth, Defendants' assertions regarding Plaintiff's sleep apnea and vision, Defs.' Br. at 23-24, do not warrant summary judgment. Defendants have failed to meet their initial burden on summary judgment of identifying evidence demonstrating the absence of a genuine issue of material fact that Plaintiff's sleep apnea and vision rendered him not "otherwise qualified" to be a State Trooper. See Celotex, 477 U.S. at 323. With respect to sleep apnea, Defendants have not identified any evidence that Plaintiff suffered from any of the potential effects of sleep apnea identified by Dr. Marrone and have not identified any evidence linking those potential effects to an inability to perform the essential functions of a State Trooper. See Marrone 1st Decl. ¶¶ 19-20, 30 (Doc. 53-1 at 89-90, 93). The Court should not presume, based on the current summary judgment record, that Plaintiff's sleep apnea rendered him incapable of performing the essential functions of a State Trooper.

With respect to Plaintiff's vision, Defendants admit that "[t]here is a real question as to whether Plaintiff's uncorrected vision meets PSP standards." Defs.' Br. at 24. This plainly equivocal statement is not sufficient for a grant of summary judgment.

Finally, summary judgment should be denied because Defendants have not fully addressed the statutory standard for determining whether Lewis can perform the essential functions of a State Trooper. Specifically, the proper standard is whether an individual can perform the essential functions "with or without reasonable accommodation." 42 U.S.C. § 12111(8); Deane v. Pocono Med. Ctr., 142 F.3d 138, 145-46 (3d Cir. 1998) (en banc). Even if Defendants are correct that Plaintiff's diabetes presents an unacceptable risk of a future hypoglycemic episode (which they have not shown), they have not argued in any fashion that the risk could not be mitigated by a reasonable accommodation. For example, the summary judgment record is devoid of any evidence indicating that Defendants satisfied their duty to

engage in an interactive process with Lewis and act in good faith to search for an appropriate reasonable accommodation for Lewis. See Mengine v. Runyon, 114 F.3d 415, 420-21 (3d Cir. 1997); Deane, 142 F.3d at 149. Defendants thus have failed to meet their burden on summary judgment of identifying evidence indicating the absence of a genuine issue of material fact with respect to whether Plaintiff is otherwise qualified to be a State Trooper.

**CONCLUSION**

A genuine issue of material fact exists as to whether Plaintiff had experienced hypoglycemic episodes prior to his disqualification from the PSP Cadet Program. Even if Plaintiff did experience a prior hypoglycemic episode, a genuine issue of material fact exists as to whether an HgbA1C level greater than 7%, combined with a prior hypoglycemic episode, indicates an unacceptably high risk of future hypoglycemic episode that would preclude an individual from performing the "essential functions" of a State Trooper. Finally, Defendants have failed to even argue that Plaintiff was not otherwise qualified "with or without reasonable accommodation," and seem to have simply read that requirement out of the statute. Thus, it is respectfully recommended that Defendants' Motion for Summary Judgment be DENIED.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.d.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by **October 19, 2010**. Responses to objections are due by **November 2, 2010**.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

October 5, 2010

cc (via email):

All counsel of record.